**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MACOMB INTERCEPTOR DRAIN
DRAINAGE DISTRICT,

    Plaintiff,

and

CITY OF DETROIT,

    Plaintiff-Intervenor,

v.                                        Case No. 11-13101

KWAME KILPATRICK, et al.,

    Defendants.
_____/

**OPINION AND ORDER DENYING INTERVENING PLAINTIFF'S EMERGENCY
*EX PARTE* MOTION FOR ALTERNATIVE SERVICE OF PROCESS**

A federal criminal action proceeds against Kwame Kilpatrick, a former mayor of Detroit. *United States v. Kilpatrick*, 10-20403 (E.D. Mich.) (Edmunds, J.). The government alleges in the action that Kilpatrick, as mayor, committed an array of wrongs to further a pervasive scheme of corruption. Meanwhile, a civil action, this action, proceeds against Kilpatrick and several defendants accused of acquiescing in, and benefitting from, a discreet alleged episode in Kilpatrick's larger alleged scheme. An alleged former friend and assistant of Kilpatrick, Derrick Miller, was named a defendant in each action. In the criminal action, he reached a plea agreement and pleaded guilty. In the civil action, he has allegedly avoided service, but he is this week testifying in this courthouse in the criminal action. After ordinary business hours on

January 8, 2013, Intervening Plaintiff City of Detroit submitted *ex parte* in the civil action an emergency motion seeking this court's order directing the marshal to serve Miller while he testifies in the criminal action. Detroit expects Miller to complete his testimony on January 10.

"Speed and hurry ought to be antipodes of judicial behavior." *Cal. Apparel Creators v. Wieder of Cal.*, 162 F.2d 893, 903 (2d Cir. 1947) (L. Hand, J., dissenting). Detroit says that Miller testified on January 7 and 8; and that its agents waited outside for him; but that "he was not seen entering or leaving the courthouse." (Dkt. # 284 at 3.) Even if Detroit surveilled diligently and Miller employed some evasion, Detroit cannot obtain rapid *ex parte* relief, with its consequent curtailment of others' rights and interests, without a forthright and exceedingly convincing brief in support of its motion. For the reasons stated below, Detroit fails to convince. Further, although it contains capable advocacy, Detroit's brief neither anticipates and addresses potential problems nor discusses adverse authority. Detroit does not provide the "enhanced . . . candor and care" needed of a party asking that *ex parte* relief be provided on a thirty-six hour schedule. *United States v. Toader*, 582 F.Supp.2d 987, 991 (N.D. Ill. 2008).

Detroit "strongly prefer[s]" that the marshal serve Miller away from the courtroom, "somewhere [] discreet within the courthouse or at his place of lodging." (Dkt. # 284 at 2, 4.) As the reason for its preference, Detroit cites only the "high-profile" nature of Kilpatrick's trial. This curiously abstract reason for "strongly preferring" service in a "discreet" place rather than a more public place leaves the court unable to determine the nature of Detroit's concern. If the concern is to avoid disrupting the criminal action, Detroit might have submitted its motion to the court hearing the criminal action. That is

2

what occurred in Detroit's most pertinent authority, *Gariby v. Sullivan*, 2010 WL 4509826 (D. Ariz. 2010)—the movant submitted its motion to the court before which the pertinent person was to appear.  That court is in the best position to determine whether service of the person in the courtroom, near the courtroom, in a "discreet" location, or anywhere else would disrupt proceedings.

  Detroit says Miller's whereabouts away from the courtroom "should be readily determinable through close, confidential, court-approved contacts between the Marshals Service and the United States Attorneys Office." (*Id.* at 2.)  It is not clear if Detroit seeks an order requiring the United States Attorney to disclose Miller's location, but it is clear that a motion seeking information from the United States Attorney should go to the action involving the United States Attorney—the criminal action.  Miller's plea agreement "does not supersede" "a cooperation agreement in writing with the government."  *United States v. Miller*, 10-20403 (Dkt. # 70 at 14) (E.D. Mich.).  By seeking relief in this action, Detroit effectively deprives the United States of the opportunity to say whether disclosing Miller's location would disrupt a term of Miller's cooperation.  Indeed, by seeking relief here, and this late, Detroit has deprived the United States of the chance to say anything.  According to Detroit, "it is highly doubtful that Mr. Miller would have broken his plea agreement and refused to testify in the [] criminal matter merely to avoid service of civil process." (Dkt. # 284 at 5-6.)  This is plausible but speculative, and the United States might well have reason to disagree.  More importantly, the United States might want to explain how exposing Miller will harm future negotiations with future potential witnesses or cause other grief.

3

In any event, there is serious doubt about whether even Detroit itself can serve Miller. Under the general rule, a witness "coming from another state or jurisdiction, [is] exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going." Stewart v. Ramsay, 242 U.S. 128, 129 (1916). Although Detroit proposes that a witness appearing involuntarily enjoys no immunity, a passage in Adamy v. Parkhurst, 61 F.2d 517 (6th Cir. 1932), appears to foreclose that position:

> It is conceded that had service been made while the appellee was in actual custody, while he was on his way to attend court and plead to [a criminal] indictment, whether he was appearing voluntarily or under compulsion, or after such appearance, but before the expiration of a reasonable time for his return [to another state], such service would have been invalid.

See also Stewart, 242 U.S. at 130 (stating that immunity applies "to witnesses attending voluntarily as well as those under subpoena"); Rimar v. MeCowan, 374 F.Supp. 1179 (E.D. Mich. 1974) (granting immunity to a person directed by his employer to appear and testify). Assuming Miller came from outside this jurisdiction, it appears probable that he enjoys immunity from service while he testifies in the criminal action.

To the extent that there may be doubt about that proposition, Learned Hand wrote, shrewdly, "[T]he proper test is not, I think, whether the appearance be voluntary or not, but whether the privilege will promote the purposes of justice." Dwelle v. Allen, 193 F. 546, 548-49 (S.D.N.Y. 1912). The Supreme Court has stated:

> [The rule] proceeds upon the ground that the due administration of justice requires that a court shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation.

4

*Lamb v. Schmitt*, 285 U.S. 222, 225 (1932); *see also Marlow v. Baird*, 301 F.2d 169, 170 (6th Cir. 1962). Although there certainly seem to be strong inducements for Miller to testify, he could nonetheless "interfere[] with the progress" of a trial by backing out of his plea agreement.

Again, though, Detroit is seeking more than merely to avoid a finding of immunity. Detroit seeks an order from this court that actively enlists the aid of the Marshals Service and, possibly, the U.S. Attorney's Office.

A ruling on whether Miller enjoys immunity from service can occur only if and when Detroit, acting on its own, serves Miller. For now it suffices to say that Detroit has not shown whether the marshal's serving Miller will interfere with Kilpatrick's criminal action or the broader administration of justice, nor has it cited any case allowing the type of extraordinary relief it seeks. Detroit ultimately fails to persuade the court that it deserves the *ex parte*, and uniquely expedited, relief it seeks. Accordingly,

IT IS ORDERED that Detroit's "Emergency *Ex Parte* Motion For Alternative Service of Process" [Dkt. # 284] is DENIED.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 10, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 10, 2013, by electronic and/or ordinary mail.

    s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\11-13101.KILPATRICK.altservice.ckb.RHC.wpd