**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MACOMB INTERCEPTOR DRAIN
DRAINAGE DISTRICT,

    Plaintiff,

and

CITY OF DETROIT,

    Plaintiff-Intervenor,

v.                                                Case No. 11-13101

KWAME KILPATRICK, et al.,

    Defendants.

_____/

**OPINION AND ORDER DENYING SATELLITE MOTIONS**

Following the issuance of the court's September 17 and October 31, 2012, orders, Plaintiff, Macomb Interceptor Drain Drainage District ("Macomb"), moves for both reconsideration and immediate appeal of portions of each order; different but overlapping groups of Defendants submit three motions for sanctions against Macomb; and some Defendants move for sanctions against Intervening Plaintiff, City of Detroit. Each matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2). Each motion lacks merit and will be denied.

**I. BACKGROUND**

The October 31 order includes this précis of the pertinent background:

In August, 2004, a large sewer line in Sterling Heights, Michigan, broke, creating a sinkhole, which collapsed part of a thoroughfare. The City of Detroit's water and sewage department hired Inland [Waters Pollution

> Control, Inc., ("Inland")] to oversee repairs, and the repairs Inland oversaw cost more than $50 million. A few years later Detroit both sold to [Macomb] the pertinent section of sewer (fully repaired) and assigned to [Macomb] Detroit's rights in contracts involving the sewer. In July, 2011, [Macomb], invoking the rights assigned by Detroit, began this action against forty Defendants who allegedly conspired to thieve millions in inflated costs from the repair project. According to the complaint, each Defendant violated RICO, the Sherman Act, and the Clayton Act; each Defendant committed fraud and tortious interference; and Inland breached a contract . . . .
>
> In January, 2012, Detroit moved to intervene. . . . The court granted Detroit's motion[.]

(Dkt. # 251 at 2-3.) Many Defendants moved for summary judgment against Macomb on the ground that Macomb lacked standing to assert any of the claims besides the breach of contract claim against Inland. Macomb argued that it had standing based on both the assignment from Detroit and the allegedly inflated cost, as a result of the alleged conspiracy, of the sale, of the assignment, and of sewer service for customers.

In the September 17 order, the court concluded that Macomb cannot raise tort or federal statutory claims based on the assignment and, further, that Macomb cannot establish that Defendants proximately caused the damage Macomb allegedly suffered. Accordingly, the court granted the moving Defendants' motion for summary judgment. The court also denied as futile a motion to amend the complaint to add new tort claims. Finally, the court directed Macomb to show cause why the court should not grant summary judgment for the non-moving Defendants.

In response to the September 17 order, Macomb acceded to summary judgment for each non-moving Defendant on each tort claim but submitted a new motion to amend the complaint. In the new motion, Macomb asked to add a breach of contract claim against alleged principals of Inland, to add quasi-contract claims against both

2

Inland and the alleged principals (together, "the Inland parties"), and to add quasi-contract claims against another group of Defendants, L. D'Agostini & Sons, Inc., and its alleged principals (together, "the LDS parties"). However, "given the simple sequence of events," the court observed in the October 31 order, "the most reasonable inference is that [Macomb's] request to add quasi-contract [and new contract] claims arises in direct reaction to the September 17 order and the failure of [Macomb's] tort [and statutory] claims." (Dkt. # 251 at 8.) Because Macomb provided no valid reason for shifting to a new theory of liability after its original theory failed, the motion to amend was denied as dilatory.

## II. DISCUSSION

### A. Macomb Interceptor's Motion for Reconsideration of the October 31 Order

Macomb seeks reconsideration of the October 31 order's conclusion that Macomb's amending the complaint would cause undue delay. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

As the October 31 order said, "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (Dkt. # 251 at 7 (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967).) Contrary to what it claims in its motion for reconsideration, Macomb failed to identify, or to say when it learned, new facts supporting the proposed new claims. The motion to amend left the court with the impression that, in asking to switch to new claims, Macomb sought to turn the exhaustive litigation of the old claims into mere lesson and rehearsal. Allowing that transformation would create undue delay, and invite more of the same down the line.

To the extent the motion for reconsideration presents new information, the information arrives too late, *see McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F.Supp2d 362, 374 (E.D. Mich. 2011); but in any event, Macomb still fails to say what it learned when. It still fails to show that it acted diligently.

The October 31 order stands.

### B.  Macomb Interceptor's Motion Seeking an Immediate Appeal

Macomb seeks to appeal, under either Rule 54(b) or 28 U.S.C. § 1292(b), the dismissal of its tort and statutory claims.

Federal Rule of Civil Procedure 54(b) empowers the district court, if it expressly finds no good reason to delay an appeal, to issue a final judgment as to one or more but fewer than all the claims in an action. Under the rule, however, "claim" means not "theory of liability" but rather "the aggregate of operative facts which give rise to a right enforceable in the courts." *Lowery v. Fed. Express Corp.*, 426 F.3d 817, 821 (6th Cir. 2005).

Macomb attempts, but only weakly, to show that its tort and statutory claims, on the one hand, and its contract claim against Inland, on the other, involve different sets of operative facts. Although Macomb now emphasizes that the alleged wrongs supporting the tort and statutory claims began before the alleged wrongs supporting the contract claim, each of Macomb's complaints alleges a single "widespread scheme to overcharge [Detroit] for time, labor and materials" for the sewer repair project. (Dkt. # 1 at 3.) The tort, statutory, and contract claims arise from heavily overlapping alleged conduct in support of a unified alleged conspiracy. For the purpose of Rule 54(b), no separate "claim" has been adjudicated yet.

4

Regardless of whether an adjudicated claim exists, there exists good reason for delay. The dismissed claims that Macomb wishes to raise on appeal, Macomb's remaining contract claim, and Detroit's claims involve mostly the same conduct. Permitting an appeal now would likely force the court of appeals "to revisit the same facts under a different theory"—or under the same theory, even—"in a second appeal." *Lowery*, 426 F.3d at 823. Further, if the district court finds later that a period of limitations bars Detroit's claims or that Detroit cannot prove damages, Macomb's proposed appeal, involving the assignment from Detroit to Macomb, would become superfluous. The court of appeals's reinstatement of the dismissed claims after the action concludes would, Macomb observes, lead to more litigation and possibly a second trial; but that risk inheres in any action involving multiple claims. *See especially Bullock v. Baptist Mem. Hosp.*, 817 F.2d 58, 60 (8th Cir. 1987) (R. Arnold, J.). The potential mischief of multiple appeals in this large action eclipses the potential labor of multiple trials.

Section 1292(b) enables the certification for appeal of a controlling question of law, open to "substantial" difference of opinion, the immediate appeal of which will more quickly end the litigation. *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). The proposed issue for appeal, the effect of the assignment clause, is not the type of "question of law" meant in § 1292(b), because it is not an issue "the court of appeals c[an] decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000). Macomb says the court of appeals would need to review "only" the assignment and "the relevant supporting documents offered by the parties" in the summary judgment papers. (Dkt. # 278 at 3.)

5

That is exactly right; to study the "relevant supporting documents" is to "study the record." No proper "question of law" exists. In addition, the assignment raises no reasonably contestable issue. Macomb attempts, mainly through faulty and extraneous interpretation, to excise the inflexible words "under any contracts" from the assignment's phrase "all rights under any contracts." Whether it occurs now or later, a renewed attempt to neutralize the qualification "under any contracts" will be a trying operation. This is not the kind of exceptional situation warranting an interlocutory appeal.

Macomb's request for an immediate appeal fails.

### C. The LDS and Inland Parties' Motion for Sanctions based on Macomb Interceptor's Alleged Discovery Abuse

In its motion for reconsideration, Macomb states that it obtained from a third party, by subpoena, the "project file" of the sewer repair project. The LDS and Inland parties seek sanctions, which can be awarded under the inherent power of the court, on the ground that Macomb conducted secret and premature discovery.

Rule 45(b)(1) requires a party to notify each other party in advance of the service of a subpoena. The LDS and Inland parties contend mainly that Macomb failed to notify the other parties before serving the subpoena seeking the project file. In a sworn statement, Macomb responds that it emailed a notice to each party but that it has no copy of the notice because counsel's email system retains each email for only six months. Macomb says that some attorneys in the action have reported finding an email from Macomb hidden, because of the action's large service list, in a spam folder; it proposes that this spam-folder problem could explain why the LDS and Inland parties never received the notice.

In reply—before they accuse Macomb of lying and acting outrageously—the LDS and Inland parties state, "This is incredible.  The undersigned queried the other counsel to see if any received e-mail notice of the subpoena.  None claims to have received such notice."  (Dkt. # 269 at 2.)  The difficulty about saying "none claims to have received . . . notice" may mean merely that no one answered counsel's query—the LDS and Inland parties submit the query but received no responses.  Macomb's counsel swears she sent a notice; the LDS and Inland parties cannot refute her sworn statement with bare accusal and equivocal evidence.  At present, no evidence confirms that Macomb provided no notice.  No evidence suggests either a pattern of misconduct or egregious misconduct.  Macomb displays no defiance or lack of repentance for a potential violation, and no evidence suggests it acted in bad faith ("Since [I] cannot prove service," Macomb's counsel writes, "[I] can only state in the alternative that any non-service was inadvertent."  (Dkt. # 266 at 7.)).  As the authority the LDS and Inland parties cite for support shows, sanctions attach in the presence of elements not present here.  Cf. *Dupuis v. City of Hamtramack*, 2007 WL 4201132, *1, *3 (E.D. Mich. 2007) (finding that counsel defiantly and unrepentantly failed to provide notice); *Murphy v. Bd. of Educ. of Rochester*, 196 F.R.D. 220 (W.D.N.Y. 2000) (finding that counsel repeatedly and unrepentantly failed to provide notice); *Spencer v. Steinman*, 1999 WL 33957391, *2 (E.D. Pa. 1999) (vacating, due to an absence of wilful misconduct, a sanctions order cited by the LDS and Inland parties).

The LDS and Inland parties hardly develop their argument that Macomb should be sanctioned for conducting discovery early.  They say they "have had no opportunity to rebut or even respond to the discovery" that occurred, (Dkt. # 257 at 5), but

7

Macomb's recent motions stand rejected, and Inland will almost certainly receive an opportunity to review the project file before responding to Macomb's only remaining claim.

The LDS and Inland parties add that Macomb violated Rule 5(b) by sending notice electronically without written consent to use that means of delivery. That, alone, is not the type of serious misconduct warranting a sanction. It is no more serious than, for example, the LDS and Inland parties' needlessly posturing their sanctions motion as an "emergency."

The motion for sanctions based on Macomb's discovery fails.

### D.  The LDS and Inland Parties' Motions for Sanctions based on Macomb Interceptor's Motion to Amend

Rule 11(b) exposes an attorney to sanctions for submitting a complaint "for any improper purpose," for asserting a claim or legal theory not "warranted by existing law," or for alleging without qualification a fact that lacks evidentiary support. In short, an attorney may suffer a sanction for unreasonable conduct. *Merritt v. Int'l Ass'n of Machinists & Aero. Workers*, 613 F.3d 609, 626 (6th Cir. 2010).

Both the LDS parties and the Inland parties (except one Inland principal, Anthony Soave) argue that Macomb's counsel should suffer Rule 11 sanctions for submitting the second motion to amend the complaint. According to them, Macomb knew or should have known both that it lacked standing to raise quasi-contract claims and that the proposed complaint was baseless.

Detroit assigned to Macomb Detroit's rights "under all contracts, warranties and guarantees" involving the sewer system. (Dkt. # 237 at 7.) A quasi-contract claim

arises only in the absence of a written contract. *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003); *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 491 (E.D. Mich. 1993). Macomb failed to explain how the assignment of Detroit's rights "under all contracts" could provide Macomb standing to assert quasi-contract claims allegedly inflicted on Detroit. Be that as it may, the LDS and Inland parties appear to equate a losing claim and a sanctionable claim. "[A]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *Pro. Rehab. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 577 N.W.2d 909, 914 (Mich. Ct. App. 1998). One who obtains rights "under a contract" can therefore construct an at least tolerable argument as to why he should also inherit a quasi-contract claim arising either from transactions closely connected to the contract or from a successful challenge to the contract's validity. There is no need to pretend that Macomb's arguments approached a persuasive theory of standing; it suffices to say that the quasi-contract claims are not obviously infirm claims warranting a sanction. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 391 (2d Cir. 2003).[1]

---

[1] The LDS parties claim that "an attorney violates Rule 11(b) by filing claims when the plaintiff clearly lacks standing." (Dkt. # 250 at 4.) In support of this assertion, they cite first the unpublished and inapposite *Dutka v. Rosenthal*, 113 F.3d 1234 (6th Cir. 1997) (table), in which the plaintiff raised a patently baseless claim involving 42 U.S.C. § 1983 but no state action and, more importantly, attracted sanctions by submitting a complaint "for the improper purpose of exacting revenge." The only published authority the LDS parties raise, *Inter-County Resources, Inc. v. Medical Resources, Inc.*, 49 F.Supp.2d 682 (S.D.N.Y. 1999), and *Storage Technology Partners II v. Storage Technology Corp.*, 117 F.R.D. 675 (D. Colo. 1987), involved securities litigation, a special field that "presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general." *Storage Tech. Corp.*, 117 F.R.D. at 682 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 (1975); *see* 5A Wright & Miller, *Federal Practice & Procedure* § 1338.1 (3d ed.); 15 U.S.C. § 78u-4(c)(1) (requiring a court to "include in the record specific findings

The lack of standing aside, Macomb faced challenges. To prevail on the quasi-contract claims, it needed to allege and prove that Detroit and LDS or Inland engaged in a specific course of conduct outside the contracts governing the sewer repair project. To prevail on the new breach of contract claim, it needed to allege and prove a course of conduct by the Inland principals justifying disregard for Inland's corporate structure. And it needed to show that the pertinent periods of limitation did not bar each claim. However, "a district court should be hesitant to determine that a party's complaint is in violation of Rule 11(b) when . . . there is nothing before the court, save the bare allegations of the complaint." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003). The LDS and Inland parties seek to begin a side dispute in which all parties, and the court, try to envision the appearance of claims as mature although they all perished young. Their request would be granted if a review of the motions for sanctions and the responses left a firm conviction that Macomb's claims were hopeless. A review of the papers leaves less than a firm conviction.

      The second motion to amend warrants no sanction.

---

regarding compliance . . . with [Rule 11(b)]" following the completion of an action under the Securities Exchange Act). The LDS parties fail to discuss a decision sanctioning conduct that resembles Macomb's.

### E.  The LDS Parties' Motion for Sanctions based on Detroit's Complaint

The LDS parties moved simultaneously for the dismissal of Detroit's complaint as intervenor and for Rule 11 sanctions against Detroit for reckless pleading.  In response, Detroit describes Detroit and the LDS parties' legitimate disputes about both applicable law and the sufficiency of the allegations in the pleading.  At this stage, that is all Detroit needs to do.

The motion for sanctions against Detroit fails.

### III.  CONCLUSION

Wasteful, petty manipulation in search of strategic advantage is unattractive, and undesirable.[2]

IT IS ORDERED that each motion [Dkts. # 250, 252, 253, 254, 256, 257] is DENIED.

  s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 11, 2013

---

[2] The frequency and tone of the tangential "satellite" motions addressed in this order suggests that some parties may be aiming to paralyze this action or some of its participants through the tactical use of intimidation, agitation, or distraction.  Counsel are encouraged to use sound judgment and attend carefully to civility obligations.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 11, 2013, by electronic and/or ordinary mail.

                                                      s/Lisa Wagner
                                                      Case Manager and Deputy Clerk
                                                      (313) 234-5522