**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MACOMB INTERCEPTOR DRAIN
DRAINAGE DISTRICT,

    Plaintiff,

and

CITY OF DETROIT,

    Plaintiff-Intervenor,

v.                                      Case No. 11-13101

KWAME KILPATRICK, et al.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Defendant L. D'Agostini & Sons, Inc., ("LDS") moves to dismiss each count against it in the City of Detroit's complaint in intervention. The matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2).

In December, 2010, the United States, alleging a campaign of fraud, extortion, bribery, nepotism, cronyism, and other corruption, indicted Kwame Kilpatrick, former mayor of Detroit, and several of Kilpatrick's aids and associates. Superseding indictments alleged, among other things, that Kilpatrick used a sewer repair project as a source of money and services for himself and as a source of business for his friend Bobby Ferguson. Using mainly the indictments' allegations, a county corporation, the pertinent sewer's present owner, began this civil action. Detroit, the previous owner, intervened, suing, among others, LDS, one of the repair project's contractors.

> Closely paraphrasing the indictments, Detroit alleges:
>
> [O]n or about September 1, 2004, after visiting the site of the sewer collapse, Kilpatrick discussed with Ferguson about how they could get work for a Ferguson-controlled company at the site. . . . Ferguson advised Kilpatrick that although Inland Waters [Pollution Control, Inc.] would be overseeing the overall repair project, subcontractor [LDS] hired all the subcontractors on the site. . . . Kilpatrick responded, "Perfect! That's what I need," and Ferguson replied, "We need to [meet] on how[] I move in [to get the work][.]"
>
> [O]n or about September 7, 2004, Kilpatrick asked Ferguson whether Ferguson had determined his share of the work on [the sewer repair project]. . . . Ferguson responded that [LDS] wanted to share the work with Ferguson on a 50/50 basis, but that Kilpatrick had to instruct [an assistant] about the arrangement, including that Kilpatrick would personally review [LDS's] invoices to ensure that Ferguson was getting his share[.]

(Dkt. # 205 ¶¶ 77-78.) Detroit (1) asserts that LDS aided and abetted Kilpatrick's breach of a fiduciary duty to Detroit and (2) seeks an accounting.

To proceed with its aiding and abetting claim, Detroit must allege that LDS both knew of and "substantially" assisted—in effect, enabled—a breach of a fiduciary duty that caused harm. *Fremont Reorganizing Corp. v. Duke*, 811 F.Supp.2d 1323, 1345-47 (E.D. Mich. 2011); *In re NM Holdings Co., LLC*, 411 B.R. 542, 551 (E.D. Mich. 2009).

Probably as a result of their origin—an indictment that does not name LDS as a defendant—the paragraphs that discuss LDS the most depict it as passive and peripheral. Kilpatrick and Ferguson carry the action, and LDS acts offstage. Although the complaint includes other references to LDS, they add little. The complaint says that LDS and Ferguson divided the repair project in a manner that enabled both to "profit," but "profit," alone, is not illegal. (Dkt. # 205 ¶ 78.) The complaint says also that LDS "knew" Ferguson used his friendship with Kilpatrick to bill Detroit for fake repair work

2

and that LDS "participated in . . . efforts . . . to fraudulently conceal its own wrongdoing," but no detail appears. (*Id.* ¶¶ 97, 112.) Detroit bases each conjecture on unspecified "information" and unelaborated "belief" about what discovery might reveal.

To be sure, the circumstances discourage the assumption that Ferguson and LDS innocently agreed to split only legitimate work. According to the complaint, both Kilpatrick and Ferguson, using threats to deny future city contracts, extracted from Inland Waters money and favors for Ferguson. (Dkt. # 205 ¶¶ 43, 103, 105, 107-10.) Kilpatrick and Ferguson's alleged conduct toward LDS resembles Kilpatrick and Ferguson's overtly extortionate alleged conduct toward Inland Waters. If an inference arises that Inland Waters and LDS were treated, and acted, alike, the complaint probably states a claim under Federal Rule of Civil Procedure 8.

But LDS contends that the aiding and abetting claim is governed by the more rigorous Rule 9(b), which requires a plaintiff to plead with particularity the circumstances of fraud. The aiding and abetting claim stands, as Detroit concedes, on LDS's allegedly helping Kilpatrick and Ferguson defraud Detroit. LDS proposes, correctly it seems, that Rule 9(b) governs because a plaintiff must allege with particularity the aiding and abetting of fraud. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012); *Am. Utd. Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006); *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). And because the complaint never alleges who from LDS spoke to Ferguson, where the discussion occurred, what specifically was said, or what LDS aimed to achieve, Detroit fails to satisfy Rule 9(b). *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012). (About LDS's aims, Detroit says tepidly that

3

LDS agreed to "help legitimize others' misconduct." (Dkt. # 267 at 17.) This is vague and insufficient.)

The aiding and abetting claim will be dismissed without prejudice. LDS seeks dismissal with prejudice, however, on the ground that the claim is barred by a limitation. The parties agree that a three-year limitation applies, that the alleged wrongful conduct ended in 2006, and that Detroit sued more than three years later, in 2012. All the same, says Detroit, LDS fraudulently concealed the claim, which tolled the limitation period. LDS responds that fraudulent concealment involves action, rather than mere silence, and that the complaint alleges no proactive concealment by LDS. As just discussed, however, the complaint alleges that LDS aided and abetted comprehensive fraud. Fraud qualifies as "a continuing affirmative act" of concealment. 16 Mich. Civ. Jur. *Limitations of Actions* § 105 (2013). In its reply, LDS says newspaper articles published in 2008 notified Detroit of a potential claim, but a reply may not introduce fresh argument. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012).

Detroit raises no challenge to LDS's argument that an accounting, a remedy, cannot proceed absent a cause of action. *See Terlecki v. Stewart*, 754 N.W.2d 899, 912 (Mich. Ct. App. 2008). In any case, even if it may stand independently, an accounting may not proceed unless the plaintiff shows that discovery will not establish the proper amount of damages. *Boyd v. Nelson Credit Cntrs., Inc.*, 348 N.W.2d 25, 27 (Mich. Ct. App. 1984). An accounting is an alternative and extraordinary remedy. *See Wilson v. Cont. Develop. Co.*, 112 F.Supp.2d 648, 663 (W.D. Mich. 1999). Although Detroit asserts that Kilpatrick's overall alleged scheme was complex, the complaint

4

contains no facts suggesting that LDS, specifically, engaged in dealings that discovery cannot arrange. Accordingly,

IT IS ORDERED that the motion to dismiss [Dkt. # 253] is GRANTED and that counts III and VIII of Detroit's complaint [Dkt. # 205] are DISMISSED WITHOUT PREJUDICE as to LDS. Detroit may submit an amended complaint by **February 18, 2013**.

      s/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: February 11, 2013


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 11, 2013, by electronic and/or ordinary mail.

      s/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522