**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MACOMB INTERCEPTOR DRAIN DRAINAGE
DISTRICT,

     Plaintiff,

                                 Case No. 11-13101

and

CITY OF DETROIT,

     Plaintiff-Intervenor,

v.

KWAME KILPATRICK, et al.,

     Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Following the court's July 3, 2013 "Order Granting Defendant's Motion to

Dismiss," Macomb Interceptor Drain Drainage District ("Macomb") amended its

complaint against Inland Waters Pollution Control ("Inland") stating a single count of

breach of contract.  Inland filed a motion to dismiss Macomb's complaint with prejudice,

arguing that it alleged acts outside of the applicable statute of limitations and failed to

state a claim for breach of contract.  For the following reasons, Inland's motion to

dismiss is denied.

**I.  BACKGROUND**

This claim arises from Inland's involvement in the repair of a collapsed sewer

interceptor at 15 Mile Road in Sterling Heights, Michigan.   Prior to this collapse, on

June 22, 2002, Inland and the City of Detroit Water and Sewerage Department entered into CS-1368, a contract for sewer repair, cleaning, and restoration (the "Contract"). The Contract was amended five times over the next four years, ostensibly to take into consideration the ever-increasing cost of repairs to the interceptor sewer line.  Detroit later assigned Macomb its rights under the Contract, including the right to recover damages caused by a breach of the Contract, but did not assign Macomb the rights to any of Detroit's then-unknown causes of action sounding in state tort or federal statutory law.  On July 18, 2011, Macomb sued forty Defendants, alleging that Kwame Kilpatrick, then the Mayor of Detroit, along with a variety of Detroit officials, conspired with Inland to overcharge the Detroit Water and Sewerage Department for the costs of repairs to the sewer interceptor.  Kilpatrick stood trial and was convicted of most charges from. Macomb's action has since been narrowed via motion practice to a single breach of contract count against a single defendant, Inland.

On July 3, 2013, the court granted Inland's motion to dismiss, noting that Macomb's complaint lacked any factual specificity for its allegations. However, the court allowed Macomb to amend its complaint to provide the required factual specificity in order to state its breach of contract claim.  Macomb filed its first amended complaint on July 22, 2013, and asserted, in essence, that Inland conspired with Kilpatrick to fraudulently increase the fees it charged for the repair of the sewer interceptor in order to provide Kilpatrick's friend, Bobby Ferguson, and his company, Ferguson Enterprises, Inc., with kickback payments.  Macomb alleges that this fraudulent activity by Inland violated the terms of the Contract.

## II.  STANDARD

Federal Rule of Civil Procedure 8(a)(2), requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  In order to survive Inland's motion to dismiss, the complaint must allege "[f]actual allegations . . . enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Only a complaint that states a plausible claim for relief can survive a motion to dismiss, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Id.* at 679 (citation, brackets, and internal quotation marks omitted).  "In determining whether to grant a [motion to dismiss], the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (quotation marks, citation, and emphasis omitted).  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10©.

### III.  DISCUSSION

**A.  Whether Macomb's Allegations in Subparagraphs 52(a), (d), (i), and (n) are Barred by Michigan's Statue of Limitations**

As the court noted in its order granting Inland's motion to dismiss, "[u]nless the plaintiff pleads itself out of court by alleging in the complaint facts proving that its claim is late, the defendant may not raise the period of limitation, an affirmative defense, in a motion to dismiss."  (Page ID# 6994–96.) (citing *In re McKenzie*, 716 F.3d 404, 412 (6th Cir. 2013).  Inland argues that by alleging acts outside of the statute of limitations in subparagraphs 52(a), (d), (i), and (n) of Macomb's first amended complaint, Macomb has done just that.

Michigan law provides for a six-year statute of limitations for breach of contract claims.  Mich. Comp. Laws § 600.5807(8).  The period of limitations begins to run from the time the breach is committed regardless of when damage results from the breach.  Mich. Comp. Laws § 600.5827.  Thus, given that Macomb's complaint was filed on July 18, 2011, Inland argues that any acts that breached the Contract that occurred prior to July 18, 2005 should be dismissed from the complaint.  Macomb responds that Michigan's six-year statute of limitations for breach of contract does not apply because the Contract was for continuous services, and a cause of action for the breach of a continuous services contract does not accrue until after the conclusion of the services. *Hanover Ins. Co. v. Eleven and One-Half Mile Drainage Dist.*, 218 N.W.2d 109, 111–12 (Mich. Ct. App. 1974).

Although Macomb refers to their argument as the "continuing services" doctrine, it is essentially the same concept as the "continuing wrong" and "continuing violations"

doctrines under Michigan law.  *See Blazer Foods, Inc. v. Restaurant Properties, Inc.*,
673 N.W.2d 805, 807 (Mich. Ct. App. 2003).  "Under the continuing wrong doctrine, 'an
alleged timely actionable event will allow consideration of and damages for connected
conduct that would otherwise be barred.'"  *Id.* at 809 (citation omitted).  However, in
*Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646 (Mich. 2005), the
Michigan Supreme Court rejected the continuing violations doctrine and held that "the
'continuing violations' doctrine . . . has no continued place in the jurisprudence of this
state."  *Id.* at 662.  Analyzing a similar statute of limitations applicable to employment
discrimination claims, the Court held:  "Nothing in these provisions permits a plaintiff to
recover for injuries outside the limitations period when they are susceptible to being
characterized as 'continuing violations.'  To allow recovery for such claims is simply to
extend the limitations period beyond that which was expressly established by the
Legislature."  *Id.* at 658.  Indeed, the Michigan Court of Appeals has specifically rejected
application of the "continuing wrong" doctrine to extend the period of limitations for a
breach of contract action.   *Blazer*, 673 N.W.2d at 812; *Romeo Inv. Ltd v. Mich. Consol.
Gas Co.*, No. 260320,  2007 WL 1264008, at *7 (Mich Ct. App. May 1, 2007) (per
curiam) (unpublished).  Thus, in the face of Michigan law to the contrary, the continuing
services doctrine does not operate to extend the statute of limitations here.

   Macomb also argues that Michigan's fraudulent concealment rule should operate
to toll the six-year statute of limitations:

> If a person who is or may be liable for any claim fraudulently conceals the
> existence of the claim . . . from the knowledge of the person entitled to sue
> on the claim, the action may be commenced at any time within 2 years after
> the person who is entitled to bring the action discovers, or should have
> discovered, the existence of the claim or the identity of the person who is
> liable for the claim, although the action would otherwise be barred by the
> period of limitations.

Mich. Comp. Laws § 600.5855. In order for the tolling provision of § 600.5855 to apply, Macomb must have specifically pled the acts or misrepresentations that comprised the fraudulent concealment. *Sills v. Oakland Gen. Hosp.*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996). "The acts constituting concealment are (1) wrongful concealment of the[] actions by the defendant[]; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 851 (6th Cir. 2006). In its complaint, Macomb alleges that Inland, Ferguson, and Kilpatrick entered into a "scheme to overcharge the Detroit Water and Sewerage Department for time, labor and materials to stabilize and repair a sewer collapse at 15 Mile Rd in the City of Sterling Heights." (Pg. ID# 7017.) It claims that this scheme originated as a deal between Kilpatrick and Inland's management to substitute Inland's original sub-contractor with Ferguson's company with the understanding that Ferguson and his company would receive a profit "unrelated to any work" he or his company would perform on the project. (*Id.*) Macomb purchased the Contract from the Detroit Water and Sewerage Department on September 2, 2010, and it alleges that it became aware of the corrupt activity between Inland, Kilpatrick, and Ferguson on December 15, 2010, when the first superseding indictment was filed against Kilpatrick, which detailed

his involvement in corruption surrounding the Contract.[1]  Within a year, Macomb filed its complaint against Inland.

Inland argues that Macomb has failed to properly allege fraudulent concealment because it did not claim that Detroit and the Detroit Water and Sewerage Department took any steps to discover Inland's alleged breach.  Inland also argues that Detroit and the Detroit Water and Sewerage Department "knew of and participated in the alleged 'scheme' through Kwame Kilpatrick, head of the [Detroit Water and Sewerage Department."  (emphasis omitted).  However, Macomb's complaint alleges that Inland violated the contract by not reporting Kilpatrick's and Ferguson's activity to the Detroit Water and Sewerage Department Board of Commissioners and the Detroit City Council, thereby suggesting that Kilpatrick's knowledge and participation was an *ultra vires* act outside of his authority as Mayor and Special Administrator of the Detroit Water and Sewerage Department.  Fairly read, Macomb's complaint further alleges that Kilpatrick, Ferguson, and Inland concealed the scheme from the authorities, and that "credible evidence" regarding the extent of the corruption only came to light upon the filing of the superseding indictment.

Because Macomb's complaint reasonably alleges fraudulent concealment of the alleged breach of contract by Inland, the court declines to rule that Macomb's allegations in subparagraphs 52(a), (d), (i), and (n) are barred by the statute of

---

[1]Although Macomb cites Exhibit U to its first amended complaint as the first superseding indictment in *United States v. Kilpatrick*, No. 10-20403, Exhibit U is the original indictment for the Kilpatrick case, which was filed on June 23, 2010.   The first superseding indictment was filed on December 15, 2010 and contains allegations regarding Kilpatrick's involvement in the Contract.  Although this document is not a part of the pleadings, it is a "matter[] of public record" and the court may take notice of it. *See Amini*, 259 F.3d at 502.

limitations.  This does not prohibit Inland from raising this issue again at a later date,

once discovery has clarified whether evidence of fraudulent concealment supports the

claims.

**B.  Whether Macomb's Claim Should Be Dismissed for Failure to State a Claim[2]**

Inland argues that Macomb's claim should be dismissed with prejudice for failing

to state a claim for which relief can be granted.  Macomb's amended complaint is

structured as a single count alleging breach of contract, with sixteen subparagraphs

specifying various acts that violated one or more provisions of the Contract.  Essentially,

the amended complaint alleges sixteen theories for how sections 12.01, 12.02, 13.01,

13.02, 15.01, and 20.10 of the Contract, as well as implied warranties of good faith and

fair dealing, were violated by Inland's actions.  "In ascertaining the meaning of a

contract, . . . the words used in the contract [are given] their plain and ordinary meaning

that would be apparent to a reader of the instrument."  *Rory v. Cont'l Ins. Co.*, 703

N.W.2d 23, at 28 (Mich. 2005).  The court addresses each contractual provision in turn.

*1.  Section 13.01 of the Contract.*

Section 13.01 of the Contract states:

> The CONSULTANT covenants that it presently has no interest and shall not acquire any interest, direct or indirect, which would conflict in any manner or degree with the performance of the Services under this Contract.  The CONSULTANT further covenants that, in the performance of this Contract, no person having any such interest shall be employed.

_____

[2]Inland also argues that Macomb has restated its earlier tort claims (which the court ruled were not assigned to Macomb) as a single claim alleging breach of contract, and that this restatement of the same allegations with a different label warrants dismissal.  However, the court specifically allowed Macomb the chance to amend its complaint and provide factual allegations supporting its breach of contract claim with the understanding that the claim would arise from Inland's dealings with Kilpatrick and Ferguson.

> The CONSULTANT further covenants that no officer, member or employee of the CITY and no other public official who exercises any functions or responsibilities in the review or approval of the undertaking or carrying out of this Contract has any personal or financial interest, direct or indirect, in this Contract or in the proceeds thereof in accordance with Article 2, Section 2-106 "Standards of Conduct" of the Charter of the City of Detroit.

(Pg. ID# 152.)  In this provision, Inland commits that:  (1) it, and those it employs, must avoid any interest which would conflict in any manner with the performance of services under the Contract, and (2) no employee of Detroit with any responsibilities related to the Contract has any personal or financial interest in it.

Macomb alleges that Inland, through its agents, met with Kilpatrick and agreed to substitute Ferguson and his company for its original subcontractor on the Contract. (Subparagraph 52(a), Pg. ID# 7017.)  Macomb further alleges that Inland knew that this substitution would allow over-payments to Ferguson as well as payments and gratuities to Kilpatrick, but that this scheme would secure the Contract for Inland.  (*Id.*)  Macomb states that this "wide spread scheme" resulted in overcharges to the Detroit Water and Sewerage Department for work performed on the sewer interceptor, and that Ferguson's company received at least $10,000,000 for its participation on the Contract, with an "assured minimum profit of about $1,500,000.00 underlined unrelated to any work [Ferguson's company] would perform on the contract."  (Subparagraphs 52(b), (d), Pg. ID# 7017–18.) (emphasis in original).  Macomb also claims that Inland agreed to pay Ferguson a minimum of $350,000, again unrelated to any work he had done, in order to obtain a $12,000,000 increase to the Contract.  (Subparagraphs 52(e), (f), Pg. ID# 7018.)  Inland allegedly kept detailed notes on these activities, and cooperated in overcharging Detroit and the Detroit Water and Sewerage Department for work that was not performed on the sewer interceptor.  (Subparagraphs 52(g), (h), (i), (j), (o), Pg. ID#

7019–20.)  Macomb claims that Inland cooperated in requesting amendments to the

Contract, thereby increasing the amount of money that could be spent on the repair,

despite its knowledge that its bid-rigging activity was fraudulently increasing the price of

the repairs.  (Subparagraphs 52(l), (n), *Id.*)

Taken together, these allegations would show that Inland failed to avoid an

interest conflicting with the proper execution of the Contract as it allegedly coordinated

with Kilpatrick and Ferguson to overcharge for services and allow kick-back payments

to be made to Ferguson.  The complaint also suggests that Kilpatrick coordinated these

kickbacks by requesting Ferguson's replacement as subcontractor, creating a

reasonable inference that Kilpatrick had a financial interest in this arrangement.  Thus,

Macomb has stated a plausible theory for a breach of section 13.01 of the Contract.

   *2.  Section 13.02 of the Contract.*

Section 13.02 of the Contract states:

> The CONSULTANT also hereby warrants that it has not and will not employ
> any person to solicit or secure this Contract upon any agreement or
> arrangement for payment of a commission, percentage, brokerage, or
> contingent fee, either directly or indirectly:   The CONSULTANT further
> agrees that if this warranty is breached, the CITY may, at its option, terminate
> this Contract without penalty, liability or obligation, or may at its election,
> deduct from any amounts owed to the CONSULTANT hereunder any
> amounts of such commission, percentage, brokerage, or contingent fee.

(Pg. ID# 152.)  In this provision, Inland commits that there exists no arrangement for

payment of a commission, percentage or fee (directly or indirectly) in order to solicit or

secure the Contract.  However, in subparagraphs 52(a), (d), (g), (i), (j), (l), (n), and (o),

Macomb alleges the existence of an "arrangement for payment," specifically the secret

overpayments to Ferguson for work that was not completed on the sewer interceptor.

Further, Macomb claims that these overpayments to Ferguson were a precondition for

Inland receiving the Contract from Detroit, as well as for the subsequent amendments to the Contract.  Macomb has stated a plausible theory for a breach of section 13.02 of the Contract.

   3.  *Sections 12.01 and 12.02 of the Contract.*

   In subparagraph 52(k), Macomb alleges that "Inland . . . purposefully fail[ed] to provide all sub-contracts and/or seek approval of all payments to sub-contractors" in violation of sections 12.01 and 12.02 of the Contract.  These sections bar Inland from assigning any interest in the Contract without the written consent of the Detroit Water and Sewerage Department, and require it to deliver an executed copy of any subcontract entered into for Special Services under the Contract to the Detroit Water and Sewerage Department.  Given the allegations elsewhere in Inland's amended complaint that Inland cooperated in overcharging the Detroit Water and Sewerage Department for work that was not completed on the sewer interceptor, Macomb has plausibly claimed that Inland failed to seek the approval of the Detroit Water and Sewerage Department for payments to subcontractors it used on the interceptor project, thereby violating sections 12.01 and 12.02 of the Contract.

   4.  *Section 15.01 of the Contract.*

   Section 15.01 of the Contract states:

   The CONSULTANT shall comply with and shall requires its Associates to comply with (a) all applicable Federal, state and local laws, ordinances, code(s), regulations and policies, including, but not limited to, all security regulations in effect from time to time on the CITY's premises; and (b) all applicable codes and regulations for materials, belonging to the CITY or developed in relationship to this Contract.  The CONSULTANT shall hold the CITY harmless with respect to any damages arising from violations of the same by it or its Associates.  . . .  The CONSULTANT shall require, as part of any subcontract that Subconsultants/Contractors comply with all such laws and regulations.

(Pg. ID# 154.)  In subparagraphs 52(a)–(j), (l), and (n)–(p), Macomb alleges that Inland

violated section 15.01 of the Contract.  Although Macomb repeatedly states that Inland

failed to comply with all applicable federal, state and local laws, nowhere does Macomb

explain how Inland broke the law or with which laws Inland failed to comply.  In

subparagraphs 52(c), (d), (e), and (g), Macomb claims that Inland violated section 15.01

by not reporting Ferguson's and Kilpatrick's corrupt behavior, but on its face, section

15.01 does not require Inland to report illegal or corrupt activity, and Macomb fails to

identify a federal, state, or local law that required Inland to do so.  Macomb has failed to

plausibly allege that section 15.01 of the Contract was violated.

     5.  *Section 20.10[3] of the Contract.*

Section 20.10 of the Contract states:

> The CONSULTANT warrants that all of the prices, terms, warranties and
> benefits granted to the CITY are comparable to or better than the equivalent
> terms presently being offered by the CONSULTANT to any other customer
> for the performance of like Services.

(Pg. ID# 7070.)  In subparagraphs 52(h), and (m)–(o), Macomb alleges that Inland

granted more favorable prices, terms, warranties and benefits to other parties.  Macomb

does not identify these other parties, what terms or conditions of their contracts with

Inland were better, or what services were provided by Inland that were similar to those

involved in the repair of the sewer interceptor.  Macomb appears to speculate that

Inland must have done business with other parties, and that the contracts with these

unidentified other parties must have contained terms that were superior to the Contract,

---

[3]It appears that the amended complaint references the wrong section of the
Contract—section 20.01 deals with the Detroit's right to insist on the strict performance
of the terms of Contract.  Inland clarifies in its motion to dismiss that Macomb was
referencing section 20.10 which appears to be the appropriate section, and the court will
proceed accordingly.

given that it was the product of corruption.  However, these allegations fail to provide Inland with reasonable notice of Macomb's claims and do not support a theory of breach of section 20.10 of the Contract.

      *6.  Implied Warranties of Good Faith and Fair Dealing.*

      Lastly, Macomb alleges in subparagraphs 52(a)–(e), (g), (i), (j), (l), (n), and (o) that Inland's conduct violated the implied warranties of good faith and fair dealing. Michigan courts indeed recognize the existence of an implied covenant of good faith and fair dealing, *see Santos v. Farmers Ins. Exch.*, No. 07-11229, 2008 WL 2937776, at *7 (E.D. Mich. 2008) (citing *Wakefield v. Globe Indem. Co.,* 225 N.W. 643 (Mich. 1929)), specifically  "where a party to a contract makes the manner of its performance a matter of its own discretion[.]" *Burkhardt v. City Nat. Bank of Detroit,* 226 N.W.2d 678, 680 (Mich. 1975). *See*, *e.g. Waller v. Truck Ins. Exch., Inc.,* 900 P.2d 619, 639 (Cal. 1995) ( "[T]he covenant [of good faith and fair dealing] is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.").

      The amended complaint alleges that Inland entered a secret agreement with Kilpatrick to substitute Ferguson for the original subcontractor in order to receive the Contract.  Macomb alleges that Ferguson was paid money for services he did not perform in order to obtain amendments increasing the value of the Contract.  A closed-door agreement to cheat the public, as Plaintiff alleges, specifies sufficiently rich detail to survive a motion to dismiss.

### IV.  CONCLUSION

      Macomb has alleged sufficient facts to allow the court to draw a reasonable inference that Inland is liable for breaching the Contract by breach of provisions under

one or more of Sections 12.01, 12.02, 13.01, and 13.02, as well as by violating the

implied warranties of good faith and fair dealing.  *See Iqbal*, 556 U.S. at 678–79.  The

court declines to decide whether Inland fraudulently concealed its alleged breach of the

Contract so as to extend the statute of limitations by two years.  However, Macomb has

reasonably alleged conduct that supports this conclusion, and discovery between the

parties may clarify the issue for more thorough presentation, and decision, if necessary,

at a later date.  Accordingly,

      IT IS ORDERED that Inland's motion to dismiss [Dkt. # 310] is DENIED.


        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  November 7, 2013


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, November 7, 2013, by electronic and/or ordinary mail.

        s/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522