UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT, ET AL., | Case No. 11-13101 |
| Plaintiffs, | SENIOR U.S. DISTRICT JUDGE ARTHUR J. TARNOW |
| v. | |
| KWAME KILPATRICK, ET AL., | U.S. MAGISTRATE JUDGE MONA K. MAJZOUB |
| Defendants. / | |

**ORDER DENYING WITHOUT PREJUDICE INTERVENOR PLAINTIFF CITY OF DETROIT'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT KILPATRICK [340]**

On October 31, 2014, Intervenor Plaintiff City of Detroit (the City) filed a Motion for Summary Judgment Against Defendants Kwame Kilpatrick and Victor Mercado [340].[1] The City moves for summary judgment only on its Racketeering Influenced and Corrupt Organizations (RICO) Act claim. On September 15, 2015, Defendant Kilpatrick filed a Response [374]. The Court finds the motion suitable

---

[1] On December 3, 2015, the Court entered a Stipulated Order [382] dismissing Defendant Mercado from this case. The motion therefore remains pending only against Defendant Kilpatrick.

1

for determination without a hearing in accord with Local Rule 7.1(f)(2).  For the reasons stated below, the City's Motion for Summary Judgment Against Defendant Kilpatrick [340] is **DENIED** without prejudice.

## FACTUAL BACKGROUND

Defendant Kilpatrick was elected Mayor of the City of Detroit in November 2001 and began his term in January 2002.  At the time Defendant Kilpatrick was elected, his predecessor, Mayor Dennis Archer, was serving as Special Administrator of the Wastewater Treatment Plant of the Detroit Water and Sewage Department (DWSD) pursuant to an order of the Honorable John Feikens.  *United States v. City of Detroit*, No. 77-71100 (E.D. Mich. Feb. 7, 2000) (Order Appointing Special Administrator for the Detroit Waste Water Treatment Plant of the Detroit Water and Sewerage Department).   On December 4, 2001, Judge Feikens issued an order appointing Defendant Kilpatrick the Special Administrator of the DWSD.  *Id.* (E.D. Mich. Dec. 4, 2001) (Order Continuing Special Administratorship for the Detroit Water and Sewage Department).  Defendant Kilpatrick remained Special Administrator until Judge Feikens terminated the Special Administratorship on January 5, 2006.  *Id.* (E.D. Mich. Jan. 5, 2006) (Opinion and Order Denying Oakland County's Motion to Replace DWSD's Court Appointed Special Administrator for Lack of Justiciability).  He remained mayor until he resigned in September 2008.

In November 2001, the DWSD approved Defendant Inland Waters Pollution Control to receive contract CS-1368, concerning sewer inspection, lining, and rehabilitation. The City and Inland executed CS-1368 in February 2002. In August 2004, a sewer collapse occurred at 15 Mile Road in Sterling Heights, Michigan. The DWSD initiated a project to repair the collapse. Inland worked on the project pursuant to two amendments to CS-1368: Amendment 2, authorized by Defendant Kilpatrick in September 2004, and Amendment 3, authorized by Defendant Kilpatrick in May 2005. After the sewer had been repaired, the City sold the sewer and its contract rights involving the sewer to the Macomb Interceptor Drain Drainage District (MIDDD), a special purpose public corporation established under the Michigan Drain Code.

On December 15, 2010, the United States brought criminal charges against Defendant Kilpatrick. The Fourth Superseding Indictment included thirty counts. "[T]he government's main theory was that Kilpatrick and [Bobby] Ferguson conspired to extort money from other Detroit-area contractors by pressuring them to include Ferguson's companies in their city contracts—even when Ferguson's companies were not the most qualified candidates and even when Ferguson's companies did no work." *United States v. Kilpatrick*, 798 F.3d 365, 373 (6th Cir. 2015).

Count One of the indictment charged Defendant Kilpatrick and others with a RICO conspiracy, alleging that between 2000 and 2009 they conspired to conduct the affairs of an enterprise through a pattern of racketeering activity involving multiple acts (all chargeable under federal or state law) of extortion, mail fraud, wire fraud, obstruction of justice, malicious threats to extort money, and acceptance of bribes by a public officer. Count One further alleged that Defendant Kilpatrick agreed that a conspirator would commit at least two such acts in conducting the enterprise's affairs. Count One proceeded to describe, across approximately sixty pages, the "means and methods" of the racketeering activity through which Defendant Kilpatrick allegedly conspired to conduct the enterprise. About four of those sixty pages described allegations that Defendant Kilpatrick conspired to extort Defendant Inland into giving Ferguson work on the 15 Mile sewer repair project and to pay Ferguson money for work on the project that he did not actually do.

Count Three of the indictment charged Defendant Kilpatrick and Ferguson with extortion, in violation of 18 U.S.C. § 1951, in connection with an amendment to CS-1368. Specifically, Count Three incorporated Count One's allegations by reference and further alleged that between September 2004 and December 2005, Defendant Kilpatrick and Ferguson, aiding and abetting each other, committed extortion "in that they obtained payments from *Company I* [Defendant Inland] of

about $175,000 in connection with an amendment to a sewer lining contract, with the consent of [Inland] induced by wrongful fear of economic harm and under color of official right."

MIDDD filed its Complaint [1] in this civil suit on July 18, 2011.[2] MIDDD's allegations overlap with those in support of the criminal charges but are narrower in scope, focusing on the portion of the alleged scheme concerning CS-1368 and the 15 Mile sewer repair project. On January 10, 2012, the City filed a Motion to Intervene [145]. On May 7, 2012, the Court issued an Order [202] granting the City permission to intervene but limiting the City's intervention to "only those claims directly arising out of the 15 Mile Road Repair Project." On May 21, 2012, the City filed its Intervenor Complaint [205]. Count One of the Intervenor Complaint is a civil claim against all Defendants, including Defendant Kilpatrick, for a RICO conspiracy. Count One acknowledges that it is limited to a conspiracy involving "CS-1368, Amendments 2 and 3, which pertains to repair of the Macomb Interceptor sewer at 15 Mile Road in Sterling Heights, Michigan."

Defendant Kilpatrick stood trial on the criminal charges against him from September 2012 to March 2013. On March 11, 2013, the jury convicted Defendant

---

[2] The case was initially assigned to the Honorable Robert H. Cleland. It was reassigned from Judge Cleland to the Honorable Sean F. Cox on February 4, 2015; from Judge Cox to the Honorable Marianne O. Battani on March 3, 2015; and from Judge Battani to this Court on March 5, 2015.

Kilpatrick on twenty-four counts, including "one count of RICO conspiracy, 18 U.S.C. § 1962(d); four counts of extortion, 18 U.S.C. § 1951; one count of attempted extortion, 18 U.S.C. § 1951; one count of bribery, 18 U.S.C. § 666(a); eleven counts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343; five counts of subscribing a false tax return, 26 U.S.C. § 7206(a); and one count of income tax evasion, 26 U.S.C. § 7201." *Kilpatrick*, 798 F.3d at 373. The jury delivered its verdict on a verdict form. The jury delivered its guilty verdict on Count One simply by marking a line indicating that Defendant Kilparick was guilty; the verdict did not include any specific findings of fact concerning the RICO conspiracy. The jury returned a guilty verdict on Count Three, marking a line indicating that Defendant Kilpatrick had committed extortion concerning the relevant amendment to CS-1368 under color of official right. Defendant Kilpatrick appealed his convictions.

On October 31, 2014, the City filed the instant Motion for Summary Judgment Against Defendant Kilpatrick [340], arguing that Defendant Kilpatrick's criminal convictions preclude any defense he might raise to its civil RICO claim. On December 8, 2014, Defendant Inland filed a Response [344], even though it is not a party to the motion. On January 11, 2015, the Court issued an Order [349] terminating Defendant Inland's response.

The case was reassigned to this Court on March 5, 2015. The Court held a status conference with the parties on March 24, 2015. At the conference, the Court directed Defendants Kilpatrick and Mercado to have their retained counsel, if any, file appearances by April 15, 2015. On April 20, 2015, Defendant Kilpatrick sent a letter to the Court [357], notifying the Court that he was unable to retain counsel and requesting an extension on the deadline to submit a response to the City's motion for summary judgment. On April 30, 2015, the Court issued an Order [358] directing Defendant Kilpatrick to file a response to the City's motion for summary judgment by May 18, 2015. He did not. Instead, Defendant Kilpatrick sent a letter to the Court styled as a Motion to Stay [360]. Defendant Kilpatrick asked the Court to stay the City's claims pending resolution of his criminal appeal. On July 28, 2015, the Court issued an Order [371] denying the request for a stay and directing Defendant Kilpatrick to submit his response within twenty days after receipt of the order.

On August 14, 2015, the Sixth Circuit affirmed Defendant Kilpatrick's criminal convictions. *Kilpatrick*, 798 F.3d at 372. On August 24, 2015, Defendant Kilpatrick filed a Letter [373] stating that he had received the Court's most recent order on August 12. On September 15, 2015, Defendant Kilpatrick filed a Response to the City's Motion for Summary Judgment [374]. The City filed a Reply [377] on October 9, 2015.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## I.     RICO conspiracy

To state a civil RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (footnote omitted). These elements, constituting the conduct prohibited by RICO, are the same in civil and criminal

RICO actions. *See id.* at 489. The City argues that Defendant Kilpatrick's criminal convictions conclusively establish these elements in this civil case.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Amos v. PPG Industries, Inc.*, 699 F.3d 448, 451 (6th Cir. 2012) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). Under the doctrine of collateral estoppel, a federal judgment bars litigation of an issue in a later case if the following requirements are met: "(1) the precise issue raised in the [later] case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007) (quoting *NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)). If these requirements are met, a finding in a criminal proceeding "may estop an individual from relitigating the same issue in a subsequent civil action." *Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2003) (citing *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568–69 (1951)).

"[T]he opacity of a general verdict may limit the use of issue preclusion." Charles A. Wright, Arthur R. Miller, et al., 18 Fed. Prac. & Proc. Juris. § 4474 (2d

ed.). But the opacity of a general verdict may not be impenetrable. "Jury decisions may be reconstructed [to determine the issues decided by the jury] by considering such indicia as the amount of the award and the reasonableness of various interpretations of the evidence, on the explicit assumption that the jury understood and adhered to the court's instructions on the law." *Id.* § 4420.

Here, Defendant Kilpatrick argues that because the jury's verdict was general, the City has failed to establish that the jury *necessarily* resolved the factual allegations underlying the City's RICO claim.[3] The key point is that the City's civil RICO claim—unlike the criminal RICO charge—is limited to a RICO conspiracy concerning the 15 Mile sewer repair project. In contrast, the criminal RICO charge included allegations of a broad array of criminal acts, many unrelated to the 15 Mile project, through which the defendants may have conspired to conduct their enterprise. As Defendant Kilpatrick emphasizes, the jury's general verdict on Count One did not state which acts the jury agreed were objects of the RICO conspiracy; thus, the RICO conviction standing alone leaves open the possibility that the jury found a RICO conspiracy unrelated to the 15 Mile project. As the City emphasizes, however, the jury's verdict on Count Three necessarily

---

[3] Defendant Kilpatrick does not challenge the City's arguments on the other requirements for applying collateral estoppel.

entailed a finding that Ferguson and Defendant Kilpatrick, aiding and abetting each other, committed extortion related to the 15 Mile Project.

The Court will apply collateral estoppel. The convictions on Count One and Count Three technically leave open the possibility that Defendant Kilpatrick and Ferguson aided and abetted each other in committing extortion related to the 15 Mile project independently of a RICO conspiracy, while also participating in a RICO conspiracy unconnected to the 15 Mile project. However, this possibility is so slim, and the inference that the jury rejected it so compelling, that it does not defeat the application of collateral estoppel. *See* Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4420. Accordingly, the Court concludes that Defendant Kilpatrick's criminal convictions establish that he conducted an enterprise through a pattern of racketeering activity sufficiently connected to the 15 Mile Project to fall within the bounds (imposed by this Court) on the City's RICO claim. As explained below, however, this is not sufficient to entitle the City to summary judgment.

## II. RICO injury and causation

A civil RICO plaintiff must allege an "injury to business or property" proximately caused by the defendants' racketeering activity. *Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556, 563–64 (6th Cir. 2013) (en banc); *see also Sedima*, 473 U.S. at 496 ("[T]he [civil RICO] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property

by the conduct constituting the violation."). The City does not claim that the criminal jury, in rendering Defendant Kilpatrick's convictions, necessarily decided that the City suffered an injury to its business or property proximately caused by the racketeering activity of Defendant Kilpatrick and his co-conspirators. Nor does the City invoke collateral estoppel on the basis of any other aspect of the criminal judgment, such as the order for Defendant Kilpatrick to pay restitution to the City.[4] Thus, the City has identified no basis for applying collateral estoppel to these elements of the City's RICO claim.

The only evidence offered by the City in support of these elements is an affidavit executed by Michael A. Hostettler of Deloitte Financial Advisory Services. The affidavit asserts that the City was overcharged for work performed under CS-1368 (not necessarily limited to work performed on the 15 Mile Project), but does not attempt to establish a causal chain between those overcharges and the racketeering activity of Defendant Kilpatrick and his co-conspirators—indeed, the affidavit does not even mention any racketeering activity. The Court therefore finds the affidavit insufficient to establish RICO injury and proximate cause as a matter of law.

---

[4] In any event, the Sixth Circuit reversed this restitution order and remanded for further proceedings. *Kilpatrick*, 798 F.3d at 388–91.

The Court must therefore deny the City's Motion for Summary Judgment. The Court will deny it without prejudice; the City may file a renewed motion for summary judgment supported by additional evidence on the injury and proximate cause elements.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the City's Motion for Summary Judgment Against Defendant Kilpatrick [340] is **DENIED** without prejudice.

**SO ORDERED**.

                                                  s/Arthur J. Tarnow
                                                  Arthur J. Tarnow
Dated: March 30, 2016             Senior United States District Judge